UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

HUNTER R. LEVI          )
                        )
          Plaintiff,    )
                        )     08-0398-CV-W- RED
v.                      )
                        )
ANHEUSER BUSCH COMPANIES, INC.  )
                        )
          Defendents,   )
                        )
                        )

## CIVIL COMPLAINT

I.   Parties

A.   Hunter R. Levi
     13001 W118 Terrace
     Overland Park, KS  66210

B.   Anheuser Busch Companies, Inc.
     One Busch Place
     St. Louis, MO 63118

Additional Defendants:

From Anheuser Busch:

| | | |
|---|---|---|
| August Busch III | Patrick Stokes | August Busch IV |
| Mark Bobak | Michael Harding | Sabrina Wrenn |
| Joseph Sellinger | Steven Busch | Jeff Pitts |
| John Jacob | Randolph Baker | & others |

AB Outside Directors:

| | | |
|---|---|---|
| Andrew Tayler | Vilma Martinez | James Forese |
| Douglas Warner | Vernon Loucks | Henry Hugh Shelton |
| Carlos Fernandes | Joyce Roche | Edward Whitacre |
| Charles Knight | James Jones | |

Richard Gephardt
Piper, Rudnick, Gray & Cary
1200 19th St., N.W.
Washington, DC  20036

James Hoffa, President
International Bro. of Teamsters
25  Louisiana Ave., N.W.
Washington, DC  20001-2198

Winston & Strawn
35 West Wacker Drive
Chicago, IL  60601

Aerotek, Inc.
7301 Parkway Drive
Hanover, MD  21076

& Others

Case 4:08-cv-00398-RED    Document 1-1    Filed 05/28/08    Page 1 of 6

## II. Jurisdiction

Hunter R. Levi, a resident of Kansas, and former resident of Missouri, was wrongfully terminated in violation of Missouri and federal law; by Anheuser Busch on August 6, 2003. Anheuser Busch (AB) is incorporated in Delaware, has facilities all over the U.S. and abroad; and has its corporate headquarters in St. Louis, MO. Levi was employed as a Teamster at AB's St. Louis Brewery from 1/8/79-8/6/03. Levi has been seeking relief from AB under Sarbanes-Oxley Act of 2002 since September 2002. Official SOX proceedings started in October 2005 at OSHA in Kansas City, MO, and continued into 2008. SOX proceedings are still pending at the USDOL in Washington, D.C.

Since there is an additional claim of violating Missouri law by joining a conspiracy to wrongfully terminate Levi, which includes obstructing Levi's reinstatement proceedings under SOX; some of the conspirators reside or do business in Washington, DC, Illinois, Maryland, New York, North Carolina, Mexico, California, Georgia and Florida; along with those who reside in Missouri.

In the event of a jury trial, finding an impartial jury in St. Louis would be extremely difficult given the immense influence AB wields in the St. Louis area; along with the stellar reputation former Congressman Gephardt has after representing St. Louis for 28 years.

In addition, Levi resides within 20 miles of the Western District Courthouse in Kansas City, MO. Traveling across the state would be an extreme hardship for Levi, especially since he is proceeding in forma pauperis.

## III. Statement of Claims

1. On 8/6/03, Anheuser Busch Companies, Inc., violated Missouri law and the Sarbanes-Oxley Act of 2002, by terminating Levi from his 24-year Teamster position at AB's St. Louis Brewery. AB terminated Levi because he failed to follow AB orders to keep quiet about a conspiracy to commit securities fraud on AB shareholders; undertaken by AB executives and board members starting in 1997. The securities fraud AB was trying to coverup included:

    A.    Insider trading on information not made public to outside investors (July 2002)

    B.    Excessive executive perks

    C.    Lying to shareholders and auditors about the Maris litigation and its risks to AB's future, starting in 1997

    D.    A fraudulent stock option compensation plan started in 1998 to enrich August Busch III, Patrick Stokes and August Busch the IV.

    E.    Illegal retaliation against SOX protected activity

    F.    A fraudulent stock buyback plan undertaken to raise the AB stock price to maximize the excess stock option awards of Busch III, Stokes and Busch IV.

G. A 2003 plan to give increased stock option awards to AB board members.

H. Lying to auditors and shareholders about the reasons for the 2003 board members stock option plan; and the need to increase in 2003, the number of shares available in the stock option plan; which was first approved by shareholders in 1998.

I. Violating SOX because their lying about the Maris trial to shareholders and auditors became illegal under SOX on July 30, 2002.

J. Scores of potential federal wire and mail fraud charges related to the AB behavior above.

Levi brings this cause of action under Missouri Cause of Action: Torts-Issue O (1993)-Chapter 26-Wrongful Discharge; and the Sarbanes-Oxley Act of 2002 (P.L.107-204), Section 806, 18USC1514A, concerning corporate whistleblowers. Section 1514A(d)-"leaves the employee with all rights, privilege and remedies under federal or state law or any collective bargaining agreement".

2. AB was aided in the wrongful termination of Levi by numerous AB employees, AB outside directors, the IBT and its members, Richard Gephardt, Aerotek, Inc., AB outside counsel Winston & Strawn and others. All entered the conspiracy of their own free will. All joined the conspiracy to benefit personally by:

A. Avoid prosecution for securities fraud and/or obstruction of SOX

B. Receive extra compensation from AB

C. Strike consulting deals with AB

D. Retain their positions

E. Receive campaign funds from AB

F. Receive political endorsements

G. Strike outside business deals with AB

H. Receive promotions at AB

I. Receive excess pensions at AB

J. Receive AB change of control payments in the event of an AB merger or buyout.

K. Receive AB distributorships for themselves or family members

Because of the obstruction caused by the conspiracy, a review of Levi's termination has yet to be held under SOX statutes; which held

the power to strike Levi's termination as it never had occurred; along with reinstatement to his position and backpay and damages. The acts of the conspirators included:

A. AB
Verbal and written threats-2001&2002
Reduction of Overtime-2001-2003
Work rule changes-2001-2003
Suspensions-June 2002, July 2002 & February 2003
Daily harassment-2001-2003
Denial of Unemployment Benefits-2003
Lied in writing to OSHA-2003
Levi's 2005 Aerotek termination
Perjury in 2003 Union arbitration hearing
False statements in SOX pleadings-2006-2008
False statements to USDOL Judge-September 2006
Distributorships to Stokes son in 2005
Distributorship to Busch III son in 2006
Consulting deals and promotions to conspirators-2006&2007
Refusal to answer SOX intereggateries-2006-2008

B. IBT
Refused to call AB execs as witnesses in 2003 arbitration
Refused to address AB perjury in arbitration
Refused to provide union documents for use by Levi in SOX proceedings-2005-2008
Refused to answer SOX interregateries to Hoffa-2006-2008

C. Richard Gephardt
Attempted to intimidate SEC in October 2002 on AB's behalf
Refused to exercise SOX power to investigate AB-2002-2004
Refused to answer SOX interregateries-2006-2008

D. Aerotek, Inc.
Terminated Levi in October 2005
Denied Unemployment Benefits to Levi-2005
Lied in Missouri Unemplyment proceedings about Levi's termination-January 2006 (claimed Levi quit)
Refused to answer SOX interregateries presented to CEO-2006-2008

E. Winston & Strawn
Presented perjured testimony in 2003 arbitration
Presented AB false statements in SOX pleadings-2006-2008
Made false statements on the record and in person to a USDOL judge, concerning AB-September 2006
Committed wire and mail fraud with 2006 SOX pleading

Levi brings this cause of action under Missouri Cause of Action: Torts Issue 0 (1993)-Chapter 10-Conspiracy. And Levi asks the Court to keep an eye towards 2 other provisions of Sarbanes-Oxley that will likely come into play. SOX Section 802 which deals with criminal obstruction (18USC1519); and SOX Section 902 concerning criminal conspiracy to commit securities fraud (18USC1349). A significant percentage of the listed co-conspirators have committed actions that reach the level of criminality; before and after Levi's termination.

4

## IV. Relief

Levi is seeking a jury trial judgement against AB and its conspirators for their wrongful termination of him.

## V. Damages

Levi is seeking actual damages of $2.5 million; and punitive damages of between $5-136 million.

## VI. Counsel

Levi is proceeding pro se, as he has in USDOL SOX proceedings and DC U.S. Appeals Court proceedings against the NLRB.

Between 2002-2006, Levi contacted nearly 100 attorneys in over 10 states, seeking representation against AB and its co-conspirators. Levi was turned down every time; including a top wrongful termination attorney in St. Louis who could not represent Levi because the attorney's wife worked at AB (2006). For now, Levi will continue pro se armed with the knowledge that 29USC1654-12 gives the Court the duty, power and latitude to protect pro se litigants from inadverdant forfeiture of their important rights; because of their lack of legal training.

## VII. Administrative Procedures

Levi had 4 SOX cases pending at the USDOL at the beginning of 2008. The first 3 were dismissed at the final USDOL-ARB stage on 4/30/08; on timeliness or repitition issues. None of the 3 SOX cases ever had discovery or a hearing concerning Levi's actual termination. Levi plans to seek review of the USDOL decision at the DC U.S. Court of Appeals. But the only issues reviewable are 1) what constitutes a timely SOX complaint, 2) when a USDOL ALJ should recuse himself and 3) the USDOL position that attorney false statements in SOX proceedings cannot be used as evidence in SOX proceedings. The USDOL has never considered or ruled on the validity of Levi's termination.

Levi 4th SOX complaint is for AB's failure to rehire Levi in 2007, 2008SOX28. Levi's complaint was dismissed by a USDOL ALJ because the ALJ claimed Levi never identified a position at AB that AB was looking to fill and that Levi was qualified for. Levi has filed a USDOL-ARB petition for review, but since the last review took almost 2 years; and this case is about AB rehiring me, not terminating me; it should not create a problem for the court. In the event of a USDOL-ARB reversal, AB could make a last ditch effort and try to use my termination as a new ground for dismissal of a SOX charge for failure to rehire; i.e., because of Levi's termination for cause, he is not qualified for any AB position. In that scenario, Levi would stay the ARB proceedings and let the Court continue its examination of Levi's termination. In any event justice for Levi has been delayed for too long  by AB and its conspirators; and the Court has the power to end that.

The other federal proceeding involves Levi seeking review of an NLRB

decision regarding James Hoffa and the IBT's failure to fairly represent him in SOX proceedings in 2007 (DC U.S. Court of Appeals No. 08-1163; CB-14-10293-Levi v Hoffa and the IBT), filed on 4/24/08. Levi is seeking a Court Order to compel the NLRB to order the IBT to provide documents pertaining to union actions in Levi's AB arbitration and Hoffa's personal dealings with AB before and after Levi's termination.

There are no other Levi v AB (or their co-conspirators) proceedings in any state or federal agency or federal court at this time. The Court should be aware however, that because AB and its co-conspirators have done such a good job delaying scrutiny of Levi's termination; numerous actions could be uncovered in discovery, depositions and a trial itself; that may warrant further Levi petitions.

## VIII. Extraordinary Circumstances

Under SOX guidelines and statutes, extraordinary measures are allowed in fighting, finding and prosecuting securities fraud on corporate shareholders; in the interest of preventing future fraud. And if the Court becomes aware of instances of AB fraud in the course of proceedings, Levi ask that the Court use its power under SOX to issue investigative referrals to the SEC, FBI and Justice Department.

And the Court need not be concerned about the issuing of investigative referrals all the way back to 1997. During the week of May 19, 2008, the SEC filed charges against one of the co-conspirators in the Bayou Hedge Fund Collapse of 2005. The SEC charged the conspirator with misleading investors from 1996-2001. Clearly any new information uncovered against AB or its conspirators in the course of these proceedings is actionable. And in the most delicious of ironies; the Bayou Hedge Fund Scandal is mentioned in my SOX cases. The victims of the fraud are represented by Winston & Strawn, and are seeking restitution in US Bankruptcy Court from the early investors who left Bayou before the scandal was exposed; including a prominent AB distributor from Memphis.

AB shareholders are already out over $30 billion and the resignation of AB's Chief Legal Officer in December 2007; and 2 AB directors in April 2008 (all listed as conspirators in this petition); signal AB is fearful of criminal and civil SEC and Justice action against them. As much as Levi hopes to prevail, it is important to remember that Levi first acted in 1997, in writing; his desire to ensure a bright future for AB. Levi's misfortune was running head on into a greedy group of executives who were unwilling to let anything stand in their way of enriching themselves and their families. Their actions have severely damaged AB and harmed Levi.

I, Hunter R. Levi, swear the above is true to the best of my knowledge and belief on ___May 27, 2008___.

Hunter R. Levi    PRO SE
13001 W118 Terrace
Overland Park, KS  66210

NOTARY PUBLIC     5/27/2008
                  DATE